IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CYNTHIA L. MARCOS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | 8:16CV223<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff Cynthia L. Marcos's ("Marcos") Motion for an Order Reversing the Commissioner's Decision (Filing No. 21) and defendant Nancy A. Berryhill's ("Commissioner") Motion to Affirm Commissioner's Decision (Filing No. 19). For the reasons stated below, the Commissioner's Motion is granted and Marcos's Motion is denied.

## I. BACKGROUND
### A. Procedural History

After Marcos applied for social security disability, an Administrative Law Judge ("ALJ") held a hearing on April 30, 2014 to determine her eligibility. The ALJ denied Marcos's claim on August 12, 2014. Marcos filed a request for the Appeals Council to review the ALJ's decision and submitted additional evidence. The Appeals Council found the new evidence did not relate to the adjudicated period and was therefore not material. The Appeals Council denied Marcos's request for review but included the additional evidence in the record.

---

[1]On January 23, 2017, Nancy A. Berryhill was appointed the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Following the denial of her appeal, Marcos filed a complaint in this Court. She argues the new evidence is relevant to the ALJ's decision because it relates to the adjudicated period. She also claims the ALJ erred in finding her fibromyalgia was not a medically determinable impairment. Finally, she argues the ALJ's decision was not based on substantial evidence because it relied on an inaccurate hypothetical posed to the vocational expert. Marcos alleges the hypothetical was inaccurate because it was based on the ALJ's faulty residual functional capacity ("RFC") finding. She argues the ALJ calculated the RFC incorrectly by (1) failing to properly analyze her credibility in connection with her subjective complaints of pain and fatigue, (2) failing to find that she had fibromyalgia, (3) relying heavily on medical consultants who only reviewed medical records, and (4) failing to consider her bilateral osteoarthritis and mental condition.[2]

### B. Facts

Marcos was born on November 19, 1966. She has a high school diploma and has been employed as a cook, daycare assistant, package loader, painter, prep-cook, school bus driver, truck driver, telemarketer and cashier. She has often worked at less than a substantial gainful employment level. Her past relevant work is that of a cafeteria cook, a skilled job of medium exertion level. She claims a disability onset date of May 19, 2010.

#### 1. Summary of the Medical Records

Marcos has complained of right hip pain, neck pain, and chronic lower back pain with radiculopathy, reported difficulties with numbness, tingling, and swelling in her hands, and also complained of dizziness and vertigo. Marcos has been diagnosed at various times with advanced osteoarthritis in her hip, acute right-sided sciatica, multi-level facet disease of the cervical spine, bilateral hand paresthesia, bilateral carpal-tunnel syndrome, fibromyalgia, bipolar disorder, post-traumatic stress disorder, mood disorder not otherwise specified, major depressive disorder, depression with anxiety, generalized

---

[2]Marcos's bilateral osteoarthritis and mental condition were the subjects of the additional evidence submitted to the Appeals Council.

anxiety disorder, narcolepsy, asthma, temporomandibular joint syndrome, chronic sinusitis, and rheumatoid arthritis. She has been treated by over twenty health care providers and facilities since 2010. Marcos has also participated in counseling, cognitive behavioral therapy, and inpatient psychiatric care.

### 2. Administrative Hearing Testimony

At the hearing, Marcos testified her last work attempt was thwarted by back pain, arm pain, and her hip "going out on [her] quite a bit." She testified that she has issues using her arms and hands that result in difficulties when picking up small items, buttoning a blouse, and grasping objects. She reported lack of strength in her right hand and difficulty lifting overhead. She also testified she can only lift about two pounds. Marcos stated she suffers from sharp pain in her lower back and testified she could sit for only fifteen minutes, stand for five to fifteen minutes, and walk fifteen or twenty minutes. She alleged pain in her neck that radiated down her arms, and that on a scale of one to ten, her neck pain was at an average level of eight to ten. She also testified to sharp pain in her lower back at the level of ten most of the time, but at the level of seven with medication. Further, she stated she experiences dizziness three or four times per week. She also stated she has three to four panic attacks per month.

She has been prescribed a walker and uses it. She wears carpal-tunnel braces when using the walker and at night. Her daily activities include minimal cooking, laundry and housework. Marcos stated her roommate provides her transportation, but she does not get out often. She has difficulty washing her hair. Her roommate has to carry things when they shop for groceries. She needs help with her socks and shoes. Marcos stated that she avoids people and cries every day. The record contains a statement from Marcos's roommate, Deidre Stratton ("Stratton"), who corroborates most of Marcos's testimony.

A vocational expert, Jackson C. McKay ("McKay"), was also present at the hearing. He testified that Marcos's past relevant work as a cafeteria cook was a skilled

job of medium exertion. The ALJ asked McKay to assume a hypothetical employee with Marcos's education and past relevant work experience who was limited to (1) light work with a thirty-minute sit/stand option, (2) occasional stooping and climbing ramps or stairs, (3) no balancing, crouching, crawling, overhead reaching, or climbing ladders, ropes, and scaffolds, (4) no concentrated exposure to respiratory irritants or vibrations, (5) no exposure to moving mechanical parts or unprotected heights, (6) simple, routine, and repetitive tasks, (7) no general public contact, (8) changes in only a routine work setting, (9) and the ability to relate adequately to coworkers and supervisors. The ALJ then asked whether that hypothetical employee could perform Marcos's former job as a cook or other work in the national economy. McKay testified that the hypothetical employee would not be able to perform Marcos's past work as a cafeteria cook but could perform light-exertion unskilled work that would be available in the national economy such as office helper, mail clerk, and hospital products assembler.

### 3. The ALJ's Determination

The ALJ undertook the familiar five-step sequential process for determining disability.[3] He found that Marcos met the first two steps of the analysis: she had not engaged in substantial gainful activity since the disability-onset date and her impairments were severe. He concluded from the medical evidence that Marcos had "the following severe impairments: post-traumatic stress disorder, degenerative disc disease, rheumatoid arthritis, osteoarthritis of the right hip, vertigo, and bipolar disorder." The ALJ specifically found that fibromyalgia was not one of the severe impairments because "the claimant's fibromyalgia is not a medically determinable impairment." He relied on the

---

[3]*See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.") (quotation and citation omitted).

4

criteria set out in a recent Social Security Ruling[4] and stated the evidence of record did not document at least eleven tender points on examination. He also found Marcos's knee arthritis and bilateral carpal-tunnel syndrome were non-severe impairments, noting that neither impairment significantly limited her ability to perform basic work activities. He stated her carpal-tunnel symptoms appeared to be nocturnal.

At the third step, the ALJ determined that Marcos did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. He considered Section 12.04 (affective disorders) and Section 12.06 (anxiety disorders). He stated "[d]espite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria if any listing, individually or in combination." He recounted Marcos's mental-health history and found "based on the evidence . . . the claimant has moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace and 1-2 episodes of decompensation."

Because her impairment did not meet or equal those listed in the Social Security regulations, the ALJ proceeded to the fourth step, which asks whether Marcos could perform her past relevant work. He determined that Marcos's RFC was consistent with the first hypothetical posed to McKay. The ALJ found that Marcos had the RFC to perform light work[5] with certain limitations: (1) a thirty-minute sit/stand option with occasional stooping and climbing ramps or stairs; (2) no balancing, crouching, crawling, overhead reaching, or climbing ladders, ropes, and scaffolds; (3) no concentrated exposure to respiratory irritants or vibrations; and (4) no exposure to moving mechanical

---

[4]SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

5

parts or unprotected heights. He stated that his RFC assessment reflected Marcos's mental functional limitations which restricted her to simple, routine, repetitive tasks with no general public contact. She could deal with changes only in a routine work setting and could relate adequately to coworkers and supervisors.

The ALJ next found, in reliance on McKay's testimony, that Marcos was unable to return to her past relevant work. He proceeded to the last step of the sequential evaluation process and determined whether Marcos was able to do any other work considering her RFC, age, education, and work experience. He mentioned that "[a]lthough the claimant generally continues to have the burden of proving disability at this step . . . the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience[.]" Noting that Marcos had a high-school education and was 43 years old at her disability onset date, the ALJ consulted the medical-vocational guidelines found in 20 C.F.R. Part 404, Appendix 2. He found that if Marcos had the RFC to perform the full range of light work, Medical-Vocational Rule 202.21 would direct a finding that she was not disabled. Because Marcos had additional limitations, the ALJ relied on McKay's testimony and found Marcos could perform the following jobs that exist in significant numbers in the national economy: office helper, mail clerk and hospital products assembler.

With respect to Marcos's testimony on pain, weakness, fatigue, and other subjective complaints, the ALJ found that her medically determinable impairments could be expected to cause the alleged symptoms, but found her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." The ALJ found Marcos had "described daily activities which are not entirely limited and that are consistent with the residual functional capacity described in this decision." He noted she had reported in the record

"the following activities: taking care of personal needs, doing laundry, walking/using public transportation, shopping, being able to manage personal finances, going to Christian meetings three time a week and traveling to Nebraska [from Florida]." He also noted Marcos had received unemployment benefits, which indicated she "was ready, willing and able to work" and demonstrated "a certain level of functioning because the claimant had to make regular reports to the state and search for jobs in order to qualify." He found Marcos's descriptions of symptoms "inconsistent and unpersuasive" throughout the record.

Noting that Marcos had received treatment for the allegedly disabling symptoms, which would normally weigh in her favor, he stated that "treatment has been somewhat successful in controlling those symptoms." He also noted gaps in Marcos's history of treatment and stated there were periods of time during which she was not taking any medications for her symptoms. Further he noted that a factor that influenced his conclusion was Marcos's "generally unpersuasive appearance and demeanor while testifying at the hearing." He also stated that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor."

He also discounted Stratton's testimony that Marcos could not sit or stand for more than fifteen to twenty minutes, stating "the observations of laypersons do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitation can reasonably be considered severe." Further, he found testimony about weakness in Marcos's hands was "also not supported by medical evidence; the claimant has also alleged this and I have addressed the lack of support for it in the medical evidence." He also rejected Stratton's "statements regarding breathing difficulties and mental difficulties," stating they had "also been addressed and limitations were placed in the residual functional capacity to reflect the severity supported by the medical evidence." He concluded "[u]ltimately this opinion is unpersuasive for the same reasons

7

that the claimant's own allegations do not persuade the undersigned, in that they lack substantial support from objective findings in the record."

The ALJ specifically credited the opinion of a state agency medical consultant who reviewed Marcos's medical records. He gave the consultant's report and Mental RFC Assessment, dated October 4, 2012, "significant weight." He noted, however, that medical records received subsequent to the medical consultant's review of Marcos's records "document[] greater mental limitations."

## II. DISCUSSION
### A. Standard of Review

When reviewing the decision not to award disability benefits, the courts do not act as fact-finders or substitute their judgment for the judgment of the ALJ or the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). In reviewing an ALJ's decision, the district court should uphold a denial of disability benefits if the ALJ's conclusion rests on substantial evidence in the record as a whole. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.* (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). When determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)).

**B. New Evidence**

The additional evidence submitted to the Appeals Council includes a mental RFC form completed by Rachel Kozol ("Kozol"), on October 2, 2015, and signed by Martin Broucek, M.D., on October 5, 2015. Kozol stated that Marcos would be absent about three times a month and had little to no ability to sustain an ordinary routine, work in proximity to others, complete a normal workday or workweek, or ask simple questions. Kozol explained that Marcos had exhibited anger and conflict with the staff at the clinic. She relied on personal observation and treatment of Marcos in support of her conclusion.

The additional medical records also include an October 13, 2015 letter written by Nirmal Raj, M.D ("Dr. Raj"). Dr. Raj stated he could not provide a physical RFC for Marcos, but he noted she had a history of bilateral osteoarthritis in her hips, greater on the right. He reported that Marcos was restricted from working due to the significant pain she verbalized with walking and standing. Dr. Raj noted Marcos walked with a quad cane. The records show Marcos underwent a right total hip arthroplasty for severe degenerative joint disease on November 2, 2015.

The Appeals Council disregarded the new information because it was about a time after August 12, 2014. Marcos argues that, although the information was gathered after August 12, 2014, it concerns impairments which were unlikely to have changed in the time after the ALJ's decision.

"Evidence is material if it is 'relevant to claimant's condition for the time period for which benefits were denied.'" *Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) (quoting *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000)). This Court only reviews the ALJ's decision, not the decision of the Appeals Council, but the Court may consider the new evidence as part of the record. *Davidson v. Astrue*, 501 F.3d 987, 989-90 (8th Cir. 2007). Marcos's argument that the impairments were unlikely to have changed after the ALJ's decision is unpersuasive, especially because Marcos has herself alleged various changes in those medical conditions. Marcos stated her bipolar disorder

9

began at age 18 and worsened in 2011. She also stated her hip issues began at age 28 and worsened at age 43. As the Appeals Council noted, the evidence is not about the adjudicated period and is not material because there is no evidence that Marcos's condition had not changed. *Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000); *but see Davidson*, 501 F.3d at 990 (acknowledging conflicting case law about the probative value and relevance of medical exams done after the adjudicated period).

### C. Fibromyalgia

The ALJ determined that Marcos's alleged fibromyalgia was not a medically determinable impairment. He relied on a Social Security Administration policy interpretation ruling when making the determination. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The interpretation ruling provides that an ALJ may make a finding of fibromyalgia only if the claimant meets one of two sets of criteria. *Id*. The first set of criteria is based on the 1990 American College of Radiology criteria and requires at least eleven positive tender points. *Id*. The second set of criteria is based on the 2010 American College of Radiology preliminary diagnostic criteria and, among other things, requires that other disorders that could cause fibromyalgia symptoms be excluded. *Id*.

Marcos claims (1) the ALJ used outdated criteria when he relied on the 1990 versions, and (2) he failed to develop the record on the number of tender points. Her first argument fails because the policy interpretation ruling remains in effect. While the ALJ could have used the 2010 criteria, he was not required to do so. *See id*. (noting that the ALJ may use either criterion to find fibromyalgia). The ALJ did not fail to develop the record on the number of tender points because documentation in the record shows Marcos was examined on December 30, 2010, and she only had five tender points.

Moreover, any error made by the ALJ would be harmless error because it did not impact the decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244, (6th Cir. 1987). As long as a claimant has at least one severe impairment, as Marcos did, the claimant will make it past the second-step analysis. Marcos was denied benefits at

step five, not step two. Finally, the policy ruling clearly states that a finding of fibromyalgia "may" be based on the criteria, but it does not say that an ALJ "must" make a finding of fibromyalgia based on the presence of the criteria. *Id*. The ALJ did not err in determining Marcos's alleged fibromyalgia was not a medically determinable impairment.

### D. RFC and Hypothetical
#### 1. Weight Given to Marcos's Testimony

Marcos argues that the ALJ failed to give her testimony the proper weight by improperly relying on (1) her demeanor while testifying, (2) her lack of treating source opinions, and (3) her application for unemployment benefits. The task of determining credibility is primarily given to the ALJ. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). However, any determination on credibility must be supported by substantial evidence. *Wildman v. Astrue*, 596 F.3d 959, 968-69 (8th Cir. 2010).

"The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." *Johnson v. Apfel*, 240 F.3d 1145, 1147-48 (8th Cir. 2001); *see also Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007). A claimant who seeks and obtains unemployment benefits hurts her credibility by showing an ability to work. *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). Finally, while there could be another explanation for the absence of treating source opinions, there is no existing Eighth Circuit precedent prohibiting the ALJ from noting their absence. Even if the ALJ was not entitled to rely on the lack of treating source opinions, it would be harmless error as he was entitled to rely on the other bases.

While none of the three factors alone would necessarily constitute substantial evidence, together they form a sufficient basis for the ALJ to find Marcos's testimony unreliable. Additionally, an RFC assessment in the record notes that Marcos was only partially credible because her reports of the severity of her symptoms were

disproportionate to the medical evidence. The ALJ had substantial evidence to find Marcos was not reliable.

### 2. State Medical Consultants

Marcos argues that the ALJ placed too much weight on the opinion of "paper review medical consultants" rather than on the testimony of physicians who physically examined her. However, the ALJ is entitled to place some reliance on state physicians who did not actually examine the claimant. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007). The ALJ did not rely entirely on the state physicians, even noting that "medical records received subsequent to this review documents [sic] greater mental limitations." The ALJ followed that conclusion by performing a detailed analysis of the record, citing to over twenty different exhibits. The ALJ did not place too much emphasis on the state physicians to the detriment of the examining doctors.

### 3. Fibromyalgia, Bilateral Osteoarthritis, and Mental Condition

Marcos also bases her claim that the ALJ's decision was not based on substantial evidence in light of the new evidence submitted to the Appeals Council and the ALJ's refusal to find a condition of fibromyalgia. For the reasons stated above, this argument is meritless.

### 4. Substantial Evidence

"Testimony from a VE [vocational expert] based on a properly phrased hypothetical question constitutes substantial evidence." *Milam v. Colvin*, 794 F.3d 978 (8th Cir. 2015). None of Marcos's arguments about why the hypothetical was improperly phrased are persuasive. Marcos bears the burden of proving any RFC limitations, even after the ALJ has concluded that she cannot perform past relevant work. *Goff*, 421 F.3d at 790. While Marcos proved some limitations, she failed to meet her burden; substantial evidence supported the ALJ's RFC determination which was based on careful examination of the voluminous record. Because the ALJ's hypothetical was properly phrased, he was entitled to rely on McKay's testimony that there were jobs available in

the national economy. The ALJ's decision that Marcos was not disabled rested on substantial evidence and will not be overturned.

**III. CONCLUSION**

The evidence submitted to the Appeals Council was not relevant to the period at issue. The ALJ did not err in determining that Marcos's alleged fibromyalgia was not a medically determinable impairment. The ALJ was entitled to rely on his findings of Marcos's reliability and on the testimony of the state medical consultant. The hypothetical posed to McKay was properly phrased and constituted substantial evidence on which to base his finding. Accordingly,

IT IS ORDERED:
1. The Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 19) is granted.
2. Marcos's Motion for an Order Reversing the Commissioner's Decision (Filing No. 21) is denied.
3. A separate judgment in accordance with this Memorandum and Order will be entered this date.

Dated this 16th day of May, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge